AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Florida

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

the premises located at 5296 Sweat Road, Green Cove Springs, FL 32043, as further described in Attachment A

)
)
)
)
)
)

Case No.  3:23-mj- 1032 - P.DB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

the premises located at 5296 Sweat Road, Green Cove Springs, FL 32043, as further described in Attachment A.

located in the _____ Middle _____ District of _____ Florida _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2252 & 2252A | transportation, receipt, distribution, possession, and access with intent to view child pornography |

The application is based on these facts:

See Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Benjamin Luedke, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/30/2023

_____
*Judge's signature*

City and state:  Jacksonville, Florida

Patricia D. Barksdale, United States Magistrate Judge
*Printed name and title*

EXHIBIT A

## ATTACHMENT A

### DESCRIPTION AND PHOTOS OF
### SUBJECT LOCATION TO BE SEARCHED

The premises to be searched (Subject Location) is a two-acre property located at 5296 Sweat Road, Green Cove Springs, FL 32043, on which sits several independent buildings or structures of varying sizes. Sweat Road is a dirt road and is located in Clay County. The Subject Location appears to be surrounded, at least partially, by a four-foot (approximate) chain link fence. One of the buildings appears to be a one-story main residence with white siding and a gray, shingled roof, and this residence is visible from a vantage point on Sweat Road. Several steps attached to the front of the main residence lead up to a black metal screen door and a covered porch. The number "5296" is visible on the front outer wall of this main residence in black over white and is affixed in a vertical orientation to the front of the residence to the left of the front door. A grass/dirt area that appears to be used as the driveway is located at the front left of the Subject Location (as viewed from a vantage point on Sweat Road.) Several photos of the Subject Location are set forth below:

Ground Surveillance – View of Subject Location from Sweat Road



Aerial view photo obtained from Clay County (Florida) Property Appraiser website



3

Aerial surveillance photos of the Subject Location provided by Customs and Border Protection





**ATTACHMENT B**

**DESCRIPTION OF ITEMS TO BE SEARCHED AND SEIZED**

1.      Any and all computer(s), computer hardware, computer software, electronic storage media (including any and all disk drives, compact disks, flash drives, wireless (cellular) telephones, "smart" phones, electronic tablets, digital cameras and/or memory cards, or any other device capable of electronic storage of data and/or images), computer-related documentation, computer passwords and data-security devices, videotapes, video-recording devices, video-recording players, and video display monitors that are or may be used to: visually depict child pornography or child erotica; display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess, or receive child pornography or child erotica.

2.      Any and all computer software, including programs to run operating systems, applications, such as word processing, graphics, and communications programs peer to peer software, that may be or are used to: visually depict child pornography (any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2)) or child erotica, display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess or receive child pornography or child erotica.

3.     Any and all notes, documents, records, or correspondence, in any format and medium (including envelopes, letters, papers, email messages, chat logs and electronic messages, and handwritten notes) related to the transportation, receipt, distribution, possession of, or access with intent to view child pornography as defined in 18 U.S.C. § 2256(8) or to the transportation, receipt, distribution, possession of, or access with intent to view visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

4.     In any format and medium, all originals, computer files, copies, and negatives of child pornography as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or child erotica.

5.     Any and all diaries or address books containing names or lists of names and addresses of individuals who have been contacted by use of the computer(s) or by other means for the purpose of distributing or receiving child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

6.     Any and all notes, documents, records, or correspondence, in any format or medium (including envelopes, letters, papers, email messages, chat logs and electronic messages, and handwritten notes), identifying persons transmitting, through interstate or foreign commerce by any means (including the United States Mail or computer) any child pornography as defined in 18 U.S.C. § 2256(8) or any

2

visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

7.      Any and all notes, documents, records, or correspondence, in any format or medium (including envelopes, letters, papers, email messages, chat logs and electronic messages, other digital data files and web cache information) concerning the transportation, receipt, distribution, possession of, or access with intent to view child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

8.      Any and all notes, documents, records, or correspondence, in any format or medium (including envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

9.      Any and all notes, documents, records, or correspondence, in any format or medium (including envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

10.      Any and all records, documents, invoices and materials, in any format or medium (including envelopes, letters, papers, email messages, chat logs and

3

electronic messages, and other digital data files) that concern any accounts with an internet service provider.

11.    Any and all records, documents, invoices and materials, in any format or medium (including envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

12.    Any and all cameras, film, videotapes or other photographic equipment capable of being used to produce, manufacture, store and/or conceal visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

13.    Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means (including the United States Mail or computer) any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

4

14.   Any and all documents, records, or correspondence, in any format or medium (including envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the premises (Subject Location) described above herein, including rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, mail envelopes, or addressed correspondence.

15.   Any and all diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

16.   Any and all documents, records, or correspondence, in any format or medium (including envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to the identity of any and all owners and/or users of any computers, computer media and any electronic storage devices discovered in the premises and capable of being used to produce, manufacture, store and/or conceal visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

17.   Any documents, records, programs or applications relating to the existence of wiping, data elimination, and/or counter-forensic programs (and associated data) that are designed to delete data from the subject computers and computer media.

18.   During the execution of the search warrant and the search of the Subject Location described in Attachment A, law enforcement personnel are

5

authorized to 1) press or swipe the fingers (including thumbs) of Carl Stephen Smith,

Jr., who is reasonably believed by law enforcement to be a user of the device(s), to

the fingerprint sensor (if one exists) of any LG or Samsung electronic device(s);

2) hold the device(s) in front of Carl Stephen Smith, Jr. and activate the facial

recognition feature, if one exists, of any LG or Samsung electronic device(s); and/or

3) hold any LG or Samsung electronic device(s) in front of the face of Carl Stephen

Smith, Jr. and activate the iris recognition feature, if one exists, for the purpose of

attempting to unlock such device(s) in order to search for evidentiary items as

authorized by this warrant.

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Benjamin J. Luedke, being duly sworn, hereby state as follows:

1.      I am a Special Agent (SA) with Homeland Security Investigations (HSI), the investigative arm of Immigration and Customs Enforcement (ICE), formerly known as the United States Customs Service. I have been assigned to the Office of the Assistant Special Agent in Charge, Jacksonville, Florida since August 2007. Prior to that, I was assigned to the Blaine, Washington office, beginning in July of 2002. I am a law enforcement officer of the United States and am thus authorized by law to engage in or supervise the prevention, detection, investigation or prosecution of violations of federal criminal law. I am responsible for enforcing federal criminal statutes under the jurisdiction of HSI, including violations of law involving the exploitation of children. I have attended the Basic Criminal Investigator School and the United States Immigration and Customs Enforcement Academy at the Federal Law Enforcement Training Center in Brunswick, Georgia, and I have received training in the area of Customs laws. In my capacity as a Special Agent, I have participated in numerous types of investigations during which I have conducted or participated in physical surveillance, undercover transactions and operations, historical investigations, extradition cases and other complex investigations. Prior to my employment with HSI, I worked as a federal police officer with the U.S. Capitol Police from June 2000 to March 2002. Since becoming a Special Agent, I have worked with experienced Special Agents and state and local law enforcement officers who also investigate child exploitation offenses.

2.     I have investigated and assisted in the investigation of criminal matters involving the sexual exploitation of children that constituted violations of 18 U.S.C. §§ 2251, 2252, 2252A, 2422, and 2423, as well as Florida state statutes that criminalize sexual activity with minors and other methods of child sexual exploitation. In connection with such investigations, I have served as case agent and have served as an undercover agent in online child exploitation cases. During the course of my investigations, I have worked closely with members of the local child exploitation task force comprised of agents and officers from HSI, the Federal Bureau of Investigation (FBI), the Florida Department of Law Enforcement (FDLE), the Jacksonville Sheriff's Office (JSO), the St. Johns County Sheriff's Office (SJSO), and the Clay County Sheriff's Office (CCSO), among other agencies. These agencies routinely share information involving the characteristics of child sex offenders as well as investigative techniques and leads. As a federal agent, I am authorized to investigate and assist in the prosecution of violations of laws of the United States, and to execute search warrants and arrest warrants issued by federal and state courts.

3.     This affidavit is based upon my personal knowledge, experience, and training, as well as other information developed during this investigation. Because this affidavit is being submitted for the limited purpose of establishing probable cause and securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that contraband, fruits,

2

instrumentalities, other items illegally possessed and evidence of violations of 18

U.S.C. §§ 2252 and/or 2252A, are present in the location to be searched.

4.     I make this affidavit in support of an application for a search warrant

for authority to search the premises located at 5296 Sweat Road, Green Cove

Springs, Florida 32043 (the "Subject Location"), as more particularly described in

Attachment A, which includes several outbuildings, as well as any computer and

computer media and electronic storage devices located therein. I also request

authority to seize any and all items listed in Attachment B as evidence, fruits, and

instrumentalities of criminal activity specified herein. I also request that this Court

authorize law enforcement officers to press the finger(s) (including thumbs) of Carl

Stephen Smith, Jr. to any LG and/or Samsung electronic device's fingerprint sensor

(if one exists) during the search of the premises in an attempt to unlock the device(s)

for the purpose of executing the search authorized by this warrant.

## STATUTORY AUTHORITY

5.     This investigation concerns alleged violations of 18 U.S.C. §§ 2252 and

2252A, relating to material involving the sexual exploitation of minors. Based upon

my training and experience, as well as conversations with other experienced law

enforcement officers, computer forensic examiners, and federal prosecutors, I know

the following:

     a.     18 U.S.C. § 2252(a) in pertinent part prohibits a person from

knowingly transporting, shipping, receiving, distributing, reproducing for

distribution, possessing or accessing with intent to view any visual depiction of

3

minors engaging in sexually explicit conduct using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, including by computer or mails.

    b.    18 U.S.C. § 2252A(a) in pertinent part prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, possessing, or accessing with intent to view any child pornography, as defined in 18 U.S.C. § 2256(8), using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, including by computer.

    c.    18 U.S.C. § 2252(a)(1) prohibits a person from knowingly transporting or shipping using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, including by computer or mails, any visual depiction of minors engaging in sexually explicit conduct. Under 18 U.S.C. § 2252(a)(2), it is a federal crime for any person to knowingly receive or distribute, by any means including by computer, any visual depiction of minors engaging in sexually explicit conduct using any means or facility of interstate or foreign commerce or that has been mailed or shipped or transported in or affecting interstate or foreign commerce. That section also makes it a federal crime for any person to knowingly reproduce any visual depiction of minors engaging in sexually explicit conduct for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through

4

the mails. Under 18 U.S.C. § 2252(a)(4), it is also a crime for a person to knowingly possess or knowingly access with intent to view, one or more books, magazines, periodicals, films, or other materials which contain visual depictions of minors engaged in sexually explicit conduct that have been mailed, or have been shipped or transported using any means or facility of interstate or foreign commerce or in and affecting interstate or foreign commerce, or which were produced using materials which have been mailed or so shipped or transported, by any means including by computer.

  d.  18 U.S.C. § 2252A(a)(1) prohibits a person from knowingly mailing, transporting, or shipping using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any child pornography. 18 U.S.C. § 2252A(a)(2) prohibits a person from knowingly receiving or distributing any child pornography that has been mailed or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer. 18 U.S.C. § 2252A(a)(3) prohibits a person from knowingly reproducing child pornography for distribution through the mails or in or affecting interstate or foreign commerce by any means, including by computer. 18 U.S.C. § 2252A(a)(5)(B) prohibits a person from knowingly possessing or knowingly accessing with intent to view any book, magazine, periodical, film, videotape, computer disk, or other material that contains an image of child pornography

5

that has been mailed, or shipped or transported using any means or facility of

interstate or foreign commerce or in or affecting interstate or foreign

commerce by any means, including by computer, or that was produced using

materials that have been mailed, or shipped or transported using any means or

facility of interstate or foreign commerce or in or affecting interstate or foreign

commerce by any means, including by computer.

## DEFINITIONS

6.      The following definitions apply to this Affidavit:

a.      "Child erotica," as used herein, means materials or items that are

sexually arousing to persons having a sexual interest in minors but that are

not, in and of themselves, illegal or that do not necessarily depict minors in

engaged in sexually explicit conduct or in sexually explicit poses or positions.

b.      "Child pornography," as used herein, includes the definitions in

18 U.S.C. § 2256(8) and 2256(9) (any visual depiction of sexually explicit

conduct where (a) the production of the visual depiction involved the use of a

minor engaged in sexually explicit conduct, (b) the visual depiction is a digital

image, computer image, or computer generated image that is, or is

indistinguishable from, that of a minor engaged in sexually explicit conduct,

or (c) the visual depiction has been created, adapted, or modified to appear

that an identifiable minor is engaged in sexually explicit conduct). *See* 18

U.S.C. §§ 2252 and 2256(2).

6

c.     "Visual depictions" include undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in permanent format. *See* 18 U.S.C. § 2256(5).

d.     "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. *See* 18 U.S.C. § 2256(2).

e.     "Computer," as used herein, is defined pursuant to 18 U.S.C. § 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high-speed data processing device performing logical, arithmetic or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

f.     "Computer hardware," as used herein, consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including,

7

but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

g.    "Computer software," as used herein, is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

h.    The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, paintings), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), personal digital assistants (PDAs), multimedia cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, or electronic notebooks, as well

8

as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

      i.     "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha numeric characters) usually operates a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Digitally coded data security software may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "boobytrap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

      j.     The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state. Based on my training and experience, I know that the Internet and cellular telephones are facilities of interstate commerce.

      k.     "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet and is associated with a physical address. IP addresses can be dynamic, meaning that the Internet

Service Provider (ISP) may assign a unique and different number to a computer at different times that it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

l.      "Wireless telephone" (or mobile telephone, or cellular telephone, or smart phone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device. Many wireless telephones are minicomputers or "smart phones" with immense storage capacity.

10

m.      A "smart phone" is a portable device that combines mobile telephone and computing functions into one unit. They are distinguished from feature phones (mobile telephone with minimal features) by their stronger hardware capabilities and extensive mobile operating systems, which facilitate wider software, internet (including web browsing over mobile broadband), and multimedia functionality (including music, video, cameras, and gaming), alongside core phone functions such as voice calls and text messaging.

n.      A "digital camera" is a camera that records pictures as digital picture files, rather than by using photographic films. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

o.      A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital

11

data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

## COMPUTERS AND CHILD PORNOGRAPHY

7.    Based upon my training and experience, as well as conversations with other experienced law enforcement officers and computer forensic examiners, I know that computers and computer technology, and the use of smart phones, have revolutionized the way in which individuals interested in child pornography interact with each other.  In the past, child pornography was produced using cameras and film (either still photography or movies). The photographs required darkroom facilities and significant skill to develop and reproduce the images.  There were definable costs involved with the production of pornographic images, and to distribute these images on any scale required significant resources and significant risks.  The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public and/or law enforcement.  The distribution of these wares was accomplished through a combination of personal contacts, mailings and telephone calls.

8.    The development of computers and smart phones, has radically changed the way that child pornographers manufacture, obtain, distribute and store their contraband.  Computers and smart phones basically serve five functions in connection with child pornography: access, production, communication, distribution, and storage.

12

9.      Child pornographers can now convert paper photographs taken with a traditional camera (using ordinary film) into a computer readable format with a device known as a scanner. Moreover, with the advent, proliferation and widespread use of digital cameras, images and videos can now be transferred directly from a digital camera onto a computer using a connection known as a USB cable or other device. Digital cameras, as well as smart phones such as the Apple iPhone, have the capacity to store images and videos indefinitely, and memory storage cards used in these cameras are capable of holding hundreds of images and videos. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers around the world.

10.     The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media, that is, the hard disk drive used in home computers has grown tremendously within the last several years. These hard disk drives can store hundreds of thousands of images at very high resolution.

11.     The World Wide Web of the Internet affords collectors of child pornography several different venues for obtaining, viewing and trading child pornography in a relatively secure and anonymous fashion.

12.     Collectors and distributors of child pornography frequently use online resources to retrieve and store child pornography, including services offered by Internet portals such as Yahoo!, and Google, as well as cloud-based online storage

13

services such as Apple's iCloud, Dropbox, and Mega, among others. The online services allow a user to set up an account with a remote computing service that provides email services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

13.     As is the case with most digital technology, communication by way of computer or smart phone can be saved or stored on the device used for these purposes. Storing this information can be intentional, i.e., by saving an email as a file on the computer or saving particular website locations in, for example, "bookmarked" files. Digital information, images and videos can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). Often, a·computer or smart phone will automatically save transcripts or logs of electronic communications between its user and other users that have occurred over the Internet. These logs are commonly referred to as "chat logs." Some programs allow computer users to trade images while simultaneously engaging in electronic communications with each other. This is often referred to as "chatting," or "instant messaging." Based upon my training and experience, as well as conversations with other law enforcement officers and computer forensic examiners, I know that these electronic "chat logs" often have great evidentiary value in child

14

pornography investigations, as they can record communication in transcript form, often show the date and time of such communication, and also may show the dates and times when images of child pornography were traded over the Internet.  In addition to electronic communications, a computer or smart phone user's Internet activities, generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains peer-to-peer software, when the computer was sharing files, and some of the files which were uploaded or downloaded. Such information is often maintained on a computer for long periods of time until overwritten by other data.

## SEARCH AND SEIZURE OF COMPUTER SYSTEMS

14.     Based upon my training and experience, as well as conversations with other experienced law enforcement officers, I know that searches and seizures of evidence from computers and smart phones commonly require agents to download or copy information from the computers and smart phones and their components, or seize most or all computer items and smart phones (hardware, software, and related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

a.     Computer storage devices (e.g., hard drives, compact disks ("CDs"), diskettes, tapes, and others) can store the equivalent of millions of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names.

15

This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site; and

      b.      Searching computer systems and smart phones for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system or smart phone, which includes the use of data search protocols, is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover hidden, erased, compressed, password protected, or encrypted files. Since computer and smart phone evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis. Based on my training and experience, as well as conversations with other law enforcement officers and computer forensic examiners, I know that forensic techniques can often recover files, including images and videos of child pornography, that have long been "deleted" from computer media or smart phones by the user.

## CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

15.     Based on my experience, training, and conversations with other experienced agents who investigate cases involving the sexual exploitation of children, I know that certain common characteristics are often present in individuals who collect child pornography. I have observed and/or learned about the reliability of these commonalities and conclusions involving individuals who collect, produce and trade images of child pornography. Based upon my training and experience, and conversations with other experienced agents who investigate cases involving the sexual exploitation of children, I know that the following traits and characteristics are often present in individuals who collect child pornography:

a.      Many individuals who traffic in and trade images of child pornography also collect child pornography. Many individuals who collect child pornography have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by sexually explicit depictions of children.

b.      Many individuals who collect child pornography also collect other sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. Many of these individuals also collect child erotica, which may consist of images or text that do not meet the legal definition of child pornography, but which nonetheless fuel their deviant sexual fantasies involving children.

17

c.      Many individuals who collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance, and support. This contact also helps these individuals to rationalize and validate their deviant sexual interest in children and associated behavior. The different Internet based vehicles used by such individuals to communicate with each other include, but are not limited to, Peer-to-Peer (P2P), email, email groups, bulletin boards, Internet Relay Chat Rooms (IRC), newsgroups, instant messaging, and other similar vehicles.

d.      Some individuals who collect child pornography maintain books, magazines, newspapers and other writings (which may be written by the collector), in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires. Such individuals often do not destroy these materials because of the psychological support that they provide.

e.      Some individuals who collect child pornography often collect, read, copy or maintain names, addresses (including email addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange, or

18

commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

f.      Many individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect them from discovery, theft, or damage. These individuals view their sexually explicit materials as prized and valuable materials, even as commodities to be traded with other like-minded individuals over the Internet. As such, they tend to maintain or "hoard" their visual depictions of child pornography for long periods of time in the privacy and security of their homes or other secure locations. These individuals may protect their illicit materials by passwords, encryption, and other security measures; save it on movable media such as CDs, DVDs, flash memory, thumb drives, and removable hard drives, which can be very small in size, including as small as a postage stamp, and easily secreted; or send it to third party image storage sites via the Internet. Based on my training and experience, as well as my conversations with other experienced law enforcement officers who conduct child exploitation investigations, I know that individuals who possess, receive, and/or distribute child pornography by computer devices using the Internet often maintain and/or possess the items listed in Attachment B.

16.      As stated in substance above and based upon my training and experience, as well as my conversations with other experienced law enforcement

19

officers, I know that individuals who collect and trade child pornography often do not willfully dispose of their child pornography collections, even after contact with law enforcement officials. For example, I learned from HSI Special Agent A. Algozzini that he conducted an investigation in 2016 in the Middle District of Florida in which the subject had his residence searched in July 2016 pursuant to a state search warrant and his wireless telephone and computer tablet seized by the Jacksonville Sheriff's Office. The search of these devices revealed the subject knowingly possessed several images of child pornography. The subject retained an attorney, and both were made aware of the ongoing investigation into the subject's commission of child pornography offenses. Approximately two months later, the subject was arrested on federal child pornography charges. On the same day as the subject's arrest, HSI executed a federal search warrant and seized a wireless telephone acquired and used by the subject after the execution of the state search warrant at his residence. Subsequent forensic examination of this wireless telephone revealed that the subject had received, possessed and viewed images of child pornography numerous times on his new device after the execution of the state search warrant and before his federal arrest.

17.     Based on my training and experience, I also know that, with the development of faster Internet download speed and the growth of file-sharing networks and other platforms through which individuals may trade child pornography, some individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and

20

repetitive basis. However, as referenced above, evidence of such activity, including deleted child pornography, often can be located on these individuals' computers and digital devices using forensic tools. Furthermore, even in instances in which an individual engages in a cycle of downloading, viewing, and deleting images, a selection of favorite images involving a particular child or act is often maintained on the device.

18.     Based on my training and experience, I know that within the last several years, individuals who have a sexual interest in minor children have used the Internet and Internet-enabled devices with increasing frequency to make contact with and attempt to establish relationships with potential child victims. These individuals may perceive that the internet provides some degree of anonymity and safety from prosecution. Because more and more children are using the Internet and Internet enabled devices, these individuals potentially expose more and more child victims to online sexual exploitation. These individuals may contact potential child victims through social networking websites such as Facebook and Twitter or may engage in online conversations with children through text messaging and email. During these online conversations, photographic images and links to Internet websites can be easily exchanged between the individual and the targeted child. Based on my training and experience, I know that when such an individual uses text messaging, email, or other websites to have online contact with children, the Internet-enabled device used, whether it is a computer, a wireless or cellular telephone, a "smart" phone, such as an "iPhone," or a tablet such as an "iPad," often saves and maintains evidence of

21

such contacts. This evidence can often be extracted and examined by a trained forensic examiner.

19.     Content on smart phones and other wireless telephones and electronic devices can also be easily transferred with the stroke of a key to other electronic devices or backed up on cloud-based storage devices. I know from my training and experience, that individuals often back-up their digital files on one electronic device to another, and that current technology permits users to read, write and transfer data between devices. I have executed search warrants where multiple electronic devices have been seized and the forensic examination has identified back-up copies of content from wireless telephones on other computer devices seized from the same residence. I have also executed search warrants where child pornography was discovered on multiple devices seized from different rooms of the same residence and purportedly primarily used by different residents within the same home.

## UNLOCKING ELECTRONIC DEVICES USING BIOMETRIC FEATURES

20.     I know from my training and experience, as well as publicly available materials, that encryption systems for mobile/smart phones and other electronic devices are becoming ever more widespread. Such encryption systems protect the contents of these devices from unauthorized access by users and render these contents unreadable to anyone who does not have the device's password. As device encryption becomes more commonplace, the encryption systems implemented by device manufacturers are becoming more robust, with few—if any—workarounds available to law enforcement investigators.

22

21.     I also know that many electronic devices, particularly newer mobile

devices and laptops, offer their users the ability to unlock the device through

biometric features in lieu of a numeric or alphanumeric passcode or password.

These biometric features include fingerprint scanners, facial recognition features, and

iris recognition features.  Some devices offer a combination of these biometric

features, and the user of such devices can select which features they would like to

utilize.

22.     If a device is equipped with a fingerprint scanner, a user may enable the

ability to unlock the device through his or her fingerprints. Examples of such devices

providing a fingerprint unlocking capability are several models of Apple's iPhone, as

well as several phones, including but not limited to the Samsung Galaxy, which use

the Android operating system. Apple iPhones may be fingerprint unlocked using a

function called Touch ID, which during setup allows for registering as many as five

(5) fingerprints to unlock the device. Samsung's Galaxy S8 and S8+ models may be

configured to be unlocked with as many as four (4) fingerprints. In fact, the number

of electronic devices providing a fingerprint unlocking capability, including both

smart phones and laptops, is growing continually.

23.     If a device is equipped with a facial recognition feature, a user may

enable the ability to unlock the device through his or her face.  For example, this

feature is available on certain Android devices and is called "Trusted Face."  During

the Trusted Face registration process, the user holds the device in front of his or her

face.  The device's front-facing camera then analyzes and records data based upon

23

the user's facial characteristics. The device can then be unlocked if the front-facing camera detects a face with characteristics that match those of the registered face. Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Trusted Face.

24. If a device is equipped with an iris recognition feature, a user may enable the ability to unlock the device with his or her irises. For example, on certain Microsoft devices, this feature is called "Windows Hello." During the Windows Hello registration, a user registers his or her irises by holding the device in front of his or her face. The device then directs an infrared light toward the user's face and activates an infrared-sensitive camera to record data based on patterns within the user's irises. The device can then be unlocked if the infrared-sensitive camera detects the registered irises. Iris recognition features found on devices produced by other manufacturers have different names but operate similarly to Windows Hello.

25. Based on my training and experience, I know that users of electronic devices often enable the above-mentioned biometric features because they are considered a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. In some instances, biometric features are considered a more secure way to protect a device's contents.

26. Related to the above discussion regarding encryption, if a forensic examination is not conducted shortly after seizing the device while it is in an unlocked state or unlocking the device using biometric features immediately upon seizing it, law enforcement investigators may completely lose the ability to

24

forensically examine the device, assuming the device's owner refuses to disclose the password. The passcode or password that would unlock any such device subject to search under this warrant is not known to law enforcement.  Thus, law enforcement personnel may not otherwise be able to access the data contained within the device, making the use of biometric features necessary to the execution of the search authorized by this warrant.

27.    Biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time.  For example, Apple devices cannot be unlocked using Touch ID when: 1) more than 48 hours has elapsed since the device was last unlocked; or 2) when the device has not been unlocked using a fingerprint for eight (8) hours and the passcode or password has not been entered in the last six (6) days. Similarly, certain Android devices cannot be unlocked with Trusted Face if the device has remained inactive for four (4) hours. Biometric features from other brands carry similar restrictions.  Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

28.    Due to the foregoing, if law enforcement personnel encounter a device that is subject to seizure pursuant to this warrant and may be unlocked using one of these biometric features, the warrant I am applying for would permit law

25

enforcement personnel to: 1) press or swipe the fingers (including thumbs) of Carl Stephen Smith, Jr., whom I have probable cause to believe is the user of the device(s), to the fingerprint scanner of the device(s); 2) hold the device(s) in front of the face of Carl Stephen Smith, Jr. and activate the facial recognition feature; and/or 3) hold the device(s) in front of the face of Carl Stephen Smith, Jr. and activate the iris recognition feature, for the purpose of attempting to unlock the device(s) in order to search the contents as authorized by this warrant. In the event that law enforcement is unable to unlock the subject device(s) within the number of attempts permitted by the pertinent operating system, this will simply result in the device(s) requiring the entry of a password or passcode before it can be unlocked.

## FACTS ESTABLISHING PROBABLE CAUSE

29.   I make this affidavit in support of a search warrant for the Subject Location that I believe to be currently occupied by Carl Stephen Smith, Jr., Gloria Ruth Smith, and Katelynn Ashley Smith. This affidavit is based upon information provided to me both verbally and in written documentation from other law enforcement officers and personnel, to include Clay County Sheriff's Office (CCSO) Detective (Det.) Ryan Ellis, as well as through an investigation I have personally conducted as set forth herein. I have also reviewed documents provided by Det. Ellis. I have personally observed the Subject Location, and it appears as set forth in Attachment A. In addition, I requested and was subsequently provided with an aerial recording of the premises taken by Customs and Border Protection (CBP) Officers on

November 21, 2022, and my subsequent review of the video revealed five visible
structures located on the premises.

30.   HSI is investigating the use of one or more computers, cellular/smart
phones, and computer media at the Subject Location to commit violations of 18
U.S.C. §§ 2252 and/or 2252A, which prohibit the transportation, receipt,
distribution, possession, and access with intent to view child pornography, that is,
visual depictions of one or more minors engaging in sexually explicit conduct as
defined in 18 U.S.C. § 2256.

31.   During September 2022, I learned from CCSO Det. Ellis that the
CCSO Internet Crimes Against Children Unit (ICAC Unit) received CyberTipline
Report 128485569 from the National Center for Missing and Exploited Children
(NCMEC) in or about August 2022. On or about September 8, 2022, I received
CyberTipline Report 128485569 from Det. Ellis. Based on my training and
experience, I know that NCMEC receives information from Electronic Service
Providers (ESPs) regarding incidents involving possible child exploitation offenses.
When ESP personnel discover that child sexual abuse material (CSAM), that is,
child pornography, has been stored and/or transmitted on that ESP's system, they
report that information to NCMEC using a CyberTipline Report. The ESP submits
this report, which generally contains account, log-in information, and other
information that may help identify a criminal subject, and uploads content to the
NCMEC via a secure connection. Aside from required information, such as incident
type, date, and time, reporters can also fill in voluntary reporting fields such as user

27

or account information, IP addresses, or information regarding the uploaded content itself, as well as other information that has been collected in connection with the suspected criminal activity. I have since reviewed CyberTipline Report 128485569 in its entirety. I have discussed the details of this investigation with Det. Ellis. Based on my communications with him, and my review of reports and documents provided, I have learned, among other things, the following information:

a.      On July 7, 2022, NCMEC received CyberTipline Report 128485569, reported by Snapchat, advising three suspected CSAM files were saved, shared, or uploaded by the reported user. The following information was provided within this CyberTipline Report:

Incident Information

Type: Child Pornography (possession, manufacture, and distribution)

Time: 7/6/2022 @ 14:59:20 UTC[1]

Description of Time: The incident date time value is when the most recent media file being reported was saved, shared, or uploaded by the reported user.

Suspect

Date of Birth: 4/█/1990

Email Address: daddysir2128@gmail.com

Screen/Username: daddysir142

---

[1] Based on my training and experience, I know that this is the approximate date and time that the CyberTipline Report was sent to NCMEC.

IP Address: 107.222.32.10 on 5/4/2022 @ 20:47:43 UTC[2]

Upload File Information

Filename: daddysir142-None-9f6722df-5fca-5838-9ea3-ef4bcaa8c40b~27-

c24a5d69a7.mp4

MD5: 5b3d9385dba4418d992e16888f9b309b

Did Reporting ESP view entire contents of uploaded file? Yes

Filename: daddysir142-None-9f6722df-5fca-5838-9ea3-ef4bcaa8c40b~3-

b98079293b.mp4

MD5: 5fa1fed4a77325c055becb061d89727b

Did Reporting ESP view entire contents of uploaded file? Yes

Filename: daddysir142-None-9f6722df-5fca-5838-9ea3-ef4bcaa8c40b~9-

196499f749.mp4

MD5: 7b90680bccaef15db3d65acc342df158

Did Reporting ESP view entire contents of uploaded file? Yes

32.    On September 22, 2022, Det. Ellis informed me of nine additional

CyberTipline Reports that appear to be associated to CyberTipline Report 128485569

(set forth above) and Carl Stephen Smith, Jr. I have since reviewed each of these

CyberTipline Reports. The following is a summary:

CyberTipline Report 129122618 – received by NCMEC on or about July 22,

2022

---

[2] Based on my training and experience, I know that this is the date and time of the most
recently recorded IP address.

29

CyberTipline Report 128912222 – received by NCMEC on or about July 17, 2022

CyberTipline Report 128485569 – received by NCMEC on or about July 7, 2022

CyberTipline Report 127298314 – received by NCMEC on or about June 17, 2022

CyberTipline Report 121144777 – received by NCMEC on or about March 28, 2022

CyberTipline Report 113531139 – received by NCMEC on or about December 29, 2021

CyberTipline Report 110099039 – received by NCMEC on or about December 8, 2021

CyberTipline Report 108133089 – received by NCMEC on or about November 25, 2021

CyberTipline Report 97479416 – received by NCMEC on or about August 6, 2021

33.     The following is a summary of the information reported in the nine related cyber tips above:

**CyberTipline Report 97479416**

Submitter: Snapchat

Uploaded Files: 2

Incident Time: 8/5/2021 @ 13:14:10 UTC

30

Suspect

Date of Birth: 4/█/1990

Email Address: daddycock142@gmail.com

Screen/Username: daddydick2128

IP Address: 2600:1700:e742:3530:499a:d9de:fb6b:5173 on 7/9/2021 @

22:10:38 UTC

I conducted open-source research and discovered the IP address above resolves to

AT&T U-Verse in Green Cove Springs, FL.

### CyberTipline Report 108133089

Submitter: Snapchat

Uploaded Files: 1

Incident Time: 11/24/2021 @ 22:30:48 UTC

Suspect

Date of Birth: 4/█/1990

Email Address: daddydick2128@gmail.com

Screen/Username: daddycum2128

IP Address: 107.222.32.10 on 10/13/2021 @ 19:21:27 UTC

I conducted open-source research and discovered the IP address above resolves to

AT&T U-Verse in Green Cove Springs, FL.

### CyberTipline Report 110099039

Submitter: Twitter, Inc. / Vine.co

Incident Time: 10/2/2021 @ 11:45:03 UTC

31

Suspect

Phone: 9042172171

Email Address: daddycock142@gmail.com

Screen/User Name: CumiesforCuties

User ID: 1440770353282703360

Profile URL: https://twitter.com/CumiesforCuties

IP Address: 107.222.32.10 (Registration) on 9/22/2021 @ 20:10:14 UTC

IP Address: 107.222.32.10 (Login) on 12/8/2021 @ 08:20:36 UTC

IP Address: 107.222.32.10 (Login) on 11/30/2021@ 01:41:03 UTC

IP Address: 172.58.168.40 (Login) on 11/24/2021 @ 13:24:51 UTC

IP Address: 172.58.128.56 (Login) on 11/23/2021 @ 22:31:16 UTC

IP Address: 172.58.168.17 (Login) on 11/23/2021 @ 21:44:59 UTC

IP Address: 107.222.32.10 (Registration) on 9/22/2021 @ 20:10:14 UTC

IP Address: 107.222.32.10 (Login) on 12/8/2021 @ 08:20:36 UTC

IP Address: 107.222.32.10 (Login) on 11/30/2021 @ 01:41:03 UTC

IP Address: 172.58.168.40 (Login) on 11/24/2021 @ 13:24:51 UTC

IP Address: 172.58.128.56 (Login) on 11/23/2021 @ 22:31:16 UTC

IP Address: 172.58.168.17 (Login) on 11/23/2021 @ 21:44:59 UTC

I conducted open-source research and discovered IP address 107.222.32.10 resolves to AT&T U-Verse in Green Cove Springs, FL, and IP addresses 172.58.168.40, 172.58.168.17, and 172.58.128.56 resolve to T-Mobile.

<u>User Provided Account Information</u>

Full Name: Daddy Cock

Location: dm4age

Description: I like to ruin pretty things

The following eight "tweets"[3] were reported:

<u>12/5/2021 @ 13:25:58</u>

URL: https://twitter.com/CumiesforCuties/status/1467485401606725635

Text: I will literally fuck a kiddo in school and make you go the whole day with my cum inside of you. Hit. Me. Up.

<u>11/24/2021 @ 22:47:02</u>

URL: https://twitter.com/CumiesforCuties/status/1463640329790398465

Text: Any kids wanna meet up? DM me. Now!

<u>11/12/2021 @ 14:06:48</u>

URL: https://twitter.com/CumiesforCuties/status/1459160753508950019

Text: All you kiddos need to add my snap so you can watch me cum while youre in class. Daddycum2128

<u>11/10/2021 @ 13:02:14</u>

URL: https://twitter.com/CumiesforCuties/status/1458419730390323200

Text: @BlkDae @ditzykidd0 If you know you want it, you arent too young.

---

[3] Based on my training and experience, I know that the term "tweet" refers to a post made by a user on Twitter, a popular online social media platform and application (app).

11/7/2021 @ 21:03:12

URL: https://twitter.com/CumiesforCuties/status/1457453607679402001

Text: I hope all you kiddos kmow, ive stroked my pdo cock to you

11/6/2021 @ 09:56:26

URL: https://twitter.com/CumiesforCuties/status/1456923418885083138

Text: I need to cum in a kiddo rn...

10/20/2021 @ 20:33:16

URL: https://twitter.com/CumiesforCuties/status/1450923092486807558

Text: Cumming for kiddos hmu!

10/2/2021 @ 11:45:03

URL: https://twitter.com/CumiesforCuties/status/1444267177754890251

Text: When she says her age while you use her little holes ♥♥♥

**CyberTipline Report 113531139**

Submitter: Snapchat

Uploaded Files: 1

Incident Time: 12/28/2021 @ 20:49:07 UTC

Suspect

Date of Birth: 4/█/1990

Email Address: daddydick2128@gmail.com

Screen/Username: daddycum2128

IP address 107.222.32.10 on 10/13/2021 @ 19:21:27

I conducted open-source research and discovered IP address 107.222.32.10 resolves to AT&T U-Verse in Green Cove Springs, FL. I learned that during preliminary investigation of CyberTipline Report 113531139 in April 2022, CCSO Sgt. Garrison requested assistance from NCMEC regarding the reported CSAM file. NCMEC responded advising the image reported in this CyberTipline Report is of an identified child from the child pornography series known as "BathtubBoots."

### CyberTipline Report 121144777

Submitter: Snapchat

Uploaded Files: 1

Incident Time: 3/27/2022 @ 21:18:21 UTC

Suspect

Date of Birth: 4/█/1990

Email Address: daddysir2128@gmail.com

Screen/Username: daddysir142

IP Address: 2600:1700:e742:3530:9caa:2ae2:4268:986d on 12/30/2021 @ 13:53:36 UTC

I conducted open-source research and discovered the IP address 2600:1700:e742:3530:9caa:2ae2:4268:986d resolves to AT&T U-Verse in Green Cove Springs, FL. I learned that during preliminary investigation of CyberTipline Report 121144777 in April 2022, CCSO Sgt. Garrison requested assistance from NCMEC regarding the reported CSAM file. NCMEC responded advising the image

35

reported in this CyberTipline Report is of an identified child from the child

pornography series "ClearBeds."

**CyberTipline Report 127298314**

Submitter: Instagram Inc.

Uploaded Files: 1

Incident Time: 6/16/2022 @ 19:20:07 UTC

Suspect

Name: Daddy Cum

Date of Birth: 4/█/1990

Approximate Age: 32

Email Address: daddycock142@gmail.com (Verified)

Screen/Username: daddycock142

**CyberTipline Report 128485569**

Submitter: Snapchat

Uploaded Files: 3

Incident Time: 7/6/2022 @ 14:59:20 UTC

Suspect

Date of Birth: 4/█/1990

Email Address: daddysir2128@gmail.com

Screen/Username: daddysir142

IP Address: 107.222.32.10 on 5/4/2022 @ 20:47:43 UTC

I conducted open-source research and discovered the IP address 107.222.32.10

resolves to AT&T U-Verse in Green Cove Springs, FL.

### CyberTipline Report 128912222

Submitter: Snapchat

Uploaded Files: 1

Incident Time: 7/16/2022 @ 17:45:20 UTC

Suspect

Date of Birth: 4/██/1990

Email Address: cummaps@gmail.com

Screen/Username: lgcummies

IP Address: 2600:1700:e742:3530:1948:105a:b7ce:35c7 on 7/7/2022 @

19:45:31 UTC

I conducted open-source research and discovered IP address

2600:1700:e742:3530:1948:105a:b7ce:35c7 resolves to AT&T U-Verse in Green

Cove Springs, FL.

### CyberTipline Report 129122618

Submitter: Snapchat

Uploaded Files: 1

Incident Time: 7/21/2022 @ 21:01:24 UTC

Suspect

Date of Birth: 4/██/1990

Email Address: cummaps@gmail.com

Screen/Username: daddycp142

IP Address: 2600:1700:e742:3530:fd51:4ed9:a5a:2ce6 on 7/20/2022 @

20:13:03 UTC

I conducted open-source research and discovered IP address

2600:1700:e742:3530:fd51:4ed9:a5a:2ce6 resolves to AT&T U-Verse in Green Cove

Springs, FL.

34.     After conducting open-source research and confirming IP address

107.222.32.10 resolved to AT&T, I issued a summons to AT&T on September 23,

2022, requesting customer information for the subscriber of IP address 107.222.32.10

on May 4, 2022 @ 20:47:43 UTC. The IP address, time and date were provided by

Snapchat in CyberTipline Report 128485569. On September 24, 2022, AT&T

provided the requested information. The following is a summary:

Billing Party

Account Name: Gloria Smith

Billing Address: 5296 Sweat Rd, Green Cove Springs, FL 32043

Acct Creation: 6/16/2014

Account Status: Open

Account Email: ████████@bellsouth.net

Service Information

Name: Gloria Smith

Service Address: 5296 Sweat Road, Green Cove Springs, FL 32043

38

Contact Phone Number: ███-2171

Contact Email: carlsmith142@gmail.com

35.      On September 23, 2022, I issued a summons to Snapchat requesting information associated with Snapchat username *daddysir142* [the username reported in CyberTipline Report 128485569]. On October 1, 2022, Snapchat provided the requested information. The following is a summary:

Subscriber Information

Created: December 30, 2021

Creation IP: 2600:1700:e742:3530:9caa:2ae2:4268:986d

Email: daddysir2128@gmail.com

IP Data

107.222.32.10

Last Seen Time: July 6, 2022 @ 09:47:57 UTC

IP address 107.222.32.10 was recorded seven times between April 22, 2022, and May 4, 2022. The following corresponding user device information was also provided by Snapchat: LM-X420; Android 9#193112010f47e#28 and Android 12; SM-G988U. As set forth above, I previously discovered that IP address 107.222.32.10 resolves to the Subject Location's AT&T U-Verse account and was recorded by Snapchat on May 4, 2022 in CyberTipline Report 128485569, and on July 6, 2022 as part of the subscriber information related to CyberTipline Report 128485569. I conducted open-source research using the descriptor "LM-X420" and discovered that it refers to an LG-K40 smart phone. I discovered specifications for the LG-K40 smart phone which

revealed it has a fingerprint sensor. I also conducted open-source research using the descriptor "SM-G988U" and discovered that it refers to a Samsung Galaxy S20 smart phone. I also learned that specifications for the Samsung Galaxy S20 smart phone revealed that this device has a fingerprint sensor.

36.    On September 27, 2022, I conducted an address search using the Subject Location within the Florida Driver and Vehicle and Information Database (DAVID) and discovered that Carl Stephen Smith, Jr. (residential and mailing address since 4/5/2013), Gloria Ruth Smith (residential and mailing address since 5/31/2018), and Katelynn Ashley Smith (residential and mailing address since 4/4/2012) provided the address of the Subject Location as their residence. Carl Stephen Smith, Jr.'s recorded date of birth was listed as 4/█/1990, the same date of birth listed in the suspect information in several of the CyberTipline Reports documented above. In addition, a black 2016 Ford vehicle, Florida license plate NQQU02, is registered to Carl Stephen Smith, Jr. My DAVID research also revealed that an individual named Carl Stephen Smith, Sr. also has the address of the Subject Location listed on his driver's license but is listed as deceased as of June 27, 2020. Also on September 27, 2022, I requested from U.S. Postal Inspector (USPI) Keith Hannon the names of any person known to receive mail at the Subject Location. Later that same day, USPI Hannon provided me with information advising that, according to U.S. Postal Service records, Carl Smith, Jr. and Katelynn Smith are named as individuals who are receiving mail at the Subject Location.

37.   On October 3, 2022, I issued a summons to T-Mobile requesting subscriber information as well as information on any current or previous devices registered to the subscriber for the account associated with telephone number ▬▬ ▬2171. On October 4, 2022, T-Mobile provided me with the requested information. The following is a summary:

Name: Carl Smith

Start: 5/14/2020

IMSI: 310260192916729

IMEI: 354084112822020

38.   On October 6, 2022, I issued a summons to AT&T requesting customer information for the subscriber of IP address 2600:1700:e742:3530:fd51:4ed9:a5a:2ce6 [reported in CyberTipline Report 129122618 set forth above] on July 20, 2022 @ 20:13:03 UTC and IP address 2600:1700:e742:3530:1948:105a:b7ce:35c7 [reported in CyberTipline Report 128912222] on July 7, 2022 @ 19:45:31 UTC. On October 7, 2022, AT&T provided the requested information. The following is a summary:

Billing Party

Account Name: Gloria Smith

Billing Address: 5296 Sweat Rd, Green Cove Springs, FL 32043

Account Creation: 6/16/2014

Account Status: Open

Account Email: ▬▬▬@bellsouth.net

41

Service Information

Name: Gloria Smith

Service Address: 5296 Sweat Road, Green Cove Springs, FL 32043

Contact Phone Number: ███████2171

Contact Email: carlsmith142@gmail.com

39.    On October 11, 2022, I issued a summons to Google requesting records and information associated with the following accounts from August 5, 2020, to present: carlsmith142@gmail.com, cummaps@gmail.com, daddycock142@gmail.com, daddydick2128@gmail.com, and daddysir2128@gmail.com. On the same day, Google provided the information. The following is a summary:

**carlsmith142@gmail.com**

Subscriber Information

Google Account ID: 8281484894

Name: Carl Smith

Created: 3/15/2011

Terms of Service IP: 98.82.227.51

Last Updated: 10/11/2022

Recovery e-Mail: carlsmith142@yahoo.com

Recovery SMS: ███████2171

42

Customer Information

Name: Carl S. Smith Jr

Address: 5296 Sweat Road, Green Cove Springs, FL 32043

Phone: ▆▆▆▆2171

IP Activity

Numerous login IP addresses recorded between 1/10/2022 and 10/6/2022

were provided. I conducted open-source research and discovered the most

recently recorded address of 2600:1700:e742:3530:ad76:c1c0:b61b:3a6d

resolves to AT&T U-Verse in Green Cove Springs, FL.

*cummaps@gmail.com*

Subscriber Information

Google Account ID: 609352323641

Name: Maps Cum

Created: 2/8/2022

Terms of Service IP: 2600:1700:e742:3530:b5a3:2e38:6975:77fc

Last Updated: 7/28/2022

Last Logins: 7/26/2022, 6/17/2022, 2/9/2022

IP Activity

Eight login IP addresses recorded between February 8, 2022 and July 26,

2022, were provided.

I conducted open-source research of the four different IP addresses (107.222.32.10,

2600:1700:e742:3530:a5db:bff1:ec8e:487a,

43

2600:1700:e742:3530:b5a3:2e38:6975:77fc, and

2607:fb90:bea3:83da:d4fe:ae01:278a:33c) recorded during logins and discovered the

first three resolve to AT&T U-Verse in Green Cove Springs, FL and the fourth

resolves to T-Mobile. IP address 107.222.32.10 matches the IP address reported by

Snapchat in CyberTipline Reports 128485569, 113531139, 108133089, and

110099039.

### *daddycock142@gmail.com*

Subscriber Information

Google Account ID: 351050498409

Name: Daddy Cock

Created: 7/9/2021

Terms of Service IP: 2600:1700:e742:3530:499a:d9de:fb6b:5173

Last Updated: 10/11/2022

Last Logins: 10/2/2022

The Terms of Service IP address matches the IP address reported by Snapchat

in CyberTipline Report 97479416.

Customer Information

Name: Carl S. Smith Jr

Address: 5296 Sweat Road, Green Cove Springs, FL 32043

Phone: ███████2171

IP Activity

Numerous login IP addresses recorded between February 8, 2022, and October 2, 2022, were provided. I conducted open-source research of the most recent recorded address of 2600:1700:e742:3530:a5b8:5bdf:26cb:b04 and discovered it resolves to AT&T U-Verse in Green Cove Springs, FL.

***daddydick2128@gmail.com***

Subscriber Information

Google Account ID: 999120784067

Name: Daddy Dick

Created: 8/29/2018

Terms of Service IP: 23.121.37.166

Last Updated: 9/14/2021

Last Logins: 9/14/2021, 8/6/2021, 3/23/2021

Recovery SMS: ████-2171

I conducted open-source research on the Terms of Service IP address above and discovered it resolves to AT&T U-Verse.

IP Activity

None

***daddysir2128@gmail.com***

Subscriber Information

Google Account ID: 944374726285

Name: Sir Daddy

45

Created: 12/16/2021

Terms of Service IP: 2600:1700:e742:3530:91fb:a4b0:36b5:7ed6

Last Updated: 7/26/2022

Last Logins: 7/26/2022, 6/17/2022, 2/9/2022

IP Activity

Four login IP addresses recorded between February 8, 2022, and July 26, 2022, were provided. I conducted open-source research on the four IP addresses (107.222.32.10, 2600:1700:e742:3530:a5db:bff1:ec8e:487a, 2600:1700:e742:3530:b5a3:2e38:6975:77fc, and 2607:fb90:bea3:83da:d4fe:ae01:278a:33c) and discovered the first three listed above resolve to AT&T U-Verse in Green Cove Springs, FL and the fourth resolves to T-Mobile. The same four IP addresses were also recorded by Google as logins for email address *cummaps@gmail.com*. IP address 107.222.32.10 matches the IP address reported by Snapchat in CyberTipline Reports 128485569, 113531139, 108133089, and 110099039.

40.    In summary, based upon my training and experience, my review of the documented CyberTipline Reports, my review of information obtained via subsequent summons, and the investigation that I have conducted as detailed above, I have probable cause to believe one or more individuals at the Subject Location has used and is using one or more computers, cellular telephones, and/or computer media at the Subject Location to commit violations of 18 U.S.C. §§ 2252 and 2252A, which prohibit the transportation, receipt, distribution, possession, and access with

46

intent to view child pornography, that is, visual depictions of one or more minors engaging in sexually explicit conduct as defined in 18 U.S.C. § 2256. I make this conclusion based on the following:

      a.    IP addresses resolving to AT&T in Green Cove Springs, FL were reported in nine of the ten CyberTipline Reports. The remaining CyberTipline Report did not report an IP address.

      b.    IP address 107.222.32.10 was reported in CyberTipline Reports 128485569, 113531139, 108133089, and 110099039. AT&T account information I subsequently obtained via summons for the subscriber of IP address 107.222.32.10 provided the Subject Location as the physical address of the account holder.

      c.    Additional IP addresses resolving to AT&T in Green Cove Springs, FL were reported in CyberTipline Reports 97479416, 121144777, 128912222, and 129122618. AT&T account information I obtained via summons for the subscriber of the IP addresses reported in CyberTipline Reports 128912222 and 129122618 provided the Subject Location as the address of the account holder. Subscriber information for the IP addresses reported in CyberTipline Reports 97479416 and 121144777 was not available due to the reporting time being beyond the known six-month time period in which ESPs retain such data.

    d.    Suspect information provided in seven of the ten CyberTipline

Reports reported a date of birth of 4/██/1990. I know from my investigation

that the same date of birth is listed on Carl Stephen Smith, Jr.'s Florida

driver's license along with the address of the Subject Location.

    e.    Suspect information provided in CyberTipline Report

110099039 reported a telephone number of ████2171. T-Mobile account

information that I obtained via summons provided the name of the subscriber

as "Carl Smith."

    f.    Suspect information provided in all ten CyberTipline

Reports reported one of the following email addresses:

daddysir2128@gmail.com, daddycock142@gmail.com,

daddydick2128@gmail.com, and cummaps@gmail.com. Google account

information I obtained via summons for daddysir2128@gmail.com,

daddycock142@gmail.com, and cummaps@gmail.com provided a recorded

IP address of 107.222.32.10. IP activity was not available for

daddydick2128@gmail.com. However, telephone number ████2171 was

provided as the "Recovery SMS."

41.    On November 16, 2022, I reviewed the CSAM files that were associated

with CyberTipline Reports 97479416, 108133089, and 121144777. My description of

the files are as follows:

48

**CyberTipline Report 97479416**

Date/Time: August 5, 2021 @ 13:12:59 UTC

File Name: daddydick2128-None-b91d3aab-1cda-5dd2-90d9-

4b12284b2b2b~39-93ac533f2f.mp4

Description: This file is a color video with sound that is approximately 59

seconds in length. The onset of the video is a close-up of what appears to be

two minor female children lying very close to each other and face to face.

While the child on the left is holding an adult's erect penis with her left hand

and has the penis in her mouth, the child on the right has her mouth in contact

with the adult's testicles. Approximately six seconds into the video, the

camera begins to pan out and the child on the right is seen lying between what

appears to be an adult male's legs and the child on the left is lying next to the

adult male's left hip and torso. The adult male continually uses his left hand to

rub the buttocks, back, and the head of the child to his left while the children

continue their same actions. A website that appears to read

"lolipornti5ljcdjjo.onion" is embossed in very small letters at the bottom of the

screen. I know from my training and experience that the term "loli" is short

for "lolita," a term that is associated with and often used by pedophiles to

describe, reference, and/or search for CSAM, that is, child pornography. I

believe the females in the video are prepubescent children based on the size of

their bodies, the size of their bodies in comparison to the male in the video,

and their child-like facial features. Based on my training and experience, as

49

well as my review of this video, I have probable cause to believe that this video depicts at least one minor engaged in sexually explicit conduct, that is, oral-genital sexual intercourse and masturbation, and therefore constitutes child pornography pursuant to 18 U.S.C. § 2256.

**CyberTipline Report 108133089**

Upload Date/Time: November 24, 2021 @ 22:30:48

File Name: daddycum2128-None-fe18a044-a75e-593f-8a31-29df42e098b2~19-09202baea5.mp4

Description: This is a color video with sound, approximately 18 seconds in length. The onset of the video is a scene shown from the viewpoint just above what appears to be the left shoulder of an adult female. The adult female is leaning over the genital area of what appears to be a prepubescent male child. The male child appears to be lying on a bed. The adult female performs oral sex on the child throughout the video. At the end of the video, the camera pans to the rear of the adult female and a male appears to be having sexual intercourse with the female. I have probable cause to believe that the male depicted in this video is a prepubescent minor child based on the child-like size of his body, size of the child's body in relation to the female in the video, the lack of pubic hair, and the lack of any visible body hair. Based on my training and experience, as well as my review of this video, I have probable cause to believe that this video depicts at least one minor engaged in sexually explicit

conduct, that is, oral-genital sexual intercourse, and therefore constitutes child pornography pursuant to 18 U.S.C. § 2256.

**CyberTipline Report 121144777**

Upload Date/Time: March 27, 2022 @ 21:18:21 UTC

File Name: daddysir142-None-e177f75b-01be-5338-9d9e-452668a3f48e~149-dcab47dc45.mp4

Description: This is a color video with sound, approximately 32 seconds in length. The onset of the video is from the viewpoint just above a prepubescent female minor child's head. The child is standing in what appears to be a bathroom. The child is holding a male's erect penis in her right hand and the erect penis is in the child's mouth. The erect penis is penetrating the child's mouth until the approximately 9-second mark at which point the male begins to manually stimulate his penis directly in front of the child's mouth. The male then ejaculates onto the minor child's face. I have probable cause to believe the female in the video is a prepubescent minor child based on the child-like size of her body, her child-like facial features, and the lack of breast development. Moreover, I have learned that NCMEC has classified this video file as a known and identified minor child victim from the documented child pornography series known as "ClearBeds." Based on my training and experience, as well as my review of this video, I have probable cause to believe that this video depicts at least one minor engaged in sexually explicit conduct,

51

that is, oral-genital sexual intercourse, and therefore constitutes child pornography pursuant to 18 U.S.C. § 2256.

42.     Det. Ellis and I have conducted surveillance at the Subject Location on numerous occasions during this investigation, most recently during January 2023. The black 2016 Ford vehicle, Florida license plate NQQU02A, registered to Carl Stephen Smith, Jr., as well as vehicles registered to Gloria Ruth Smith, and Katelynn Ashley Smith have been observed at the Subject Location.

43.     On January 3, 2023, I issued a summons to Clay Electric Cooperative Inc. requesting customer account information for the Subject Location. On January 11, 2023, I received the requested information. The following is a summary:

Customer Account Summary

Carl S Smith

5296 Sweat Rd, Green Cove Springs, FL 32043

Connection Date: 4/24/2002

## CONCLUSION

44.     Based on the foregoing, I have probable cause to believe that one or more individuals have used and is using one or more computer devices, smart phones, and/or electronic storage media at the premises located at 5296 Sweat Road, Green Cove Springs, Florida 32043, that is, the Subject Location, more fully described in Attachment A to this affidavit to, among other things, transport, receive, distribute, possess, and access with intent to view child pornography. Therefore, I have probable cause to believe that one or more individuals, using the Subject

52

Location described above, has violated 18 U.S.C. §§ 2252 and/or 2252A.

Additionally, I have probable cause to believe that fruits, evidence, and

instrumentalities of violations of 18 U.S.C. §§ 2252 and 2252A, including at least one

computer device, cellular telephone, and/or other electronic storage media

containing images and/or videos depicting child pornography, and the items more

fully described in Attachment B to this affidavit (which is incorporated by reference

herein), will be located at the Subject Location.

45.     Accordingly, I respectfully request a search warrant be issued by this

Court authorizing the search and seizure of the items listed in Attachment B. I also

request that in such search warrant this Court authorize law enforcement officers to

press the finger(s) (including thumbs) of Carl Stephen Smith, Jr. to any LG or

Samsung electronic device's fingerprint sensor (if one exists) and/or present his iris or

face to such device's camera during the search of the Subject Location in an attempt

to unlock the device(s) for the purpose of executing the search authorized by this

warrant.

## REQUEST FOR SEALING

46.     It is respectfully requested that this Court issue an order sealing, until

further order of the Court, all papers submitted in support of this application,

including the application and search warrant. I believe that sealing this document is

necessary because this search warrant is relevant to an ongoing investigation. Based

upon my training and experience, I have learned that online criminals sometime

actively search for criminal affidavits and search warrants via the internet and

disseminate them to other online criminals. Sharing of the information set forth in this affidavit may cause individuals to destroy relevant evidence and/or flee in order to avoid prosecution. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the ongoing investigation and may severely jeopardize its effectiveness.

Benjamin J. Luedke, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this
__30th__ day of January, 2023, at Jacksonville, Florida.

PATRICIA D. BARKSDALE
United States Magistrate Judge